In the Matter of DREYFUS SPECIAL INCOME FUND, INC., Respondent, v NEW YORK STATE TAX COMMISSION, Appellant.

Third Department, April 2, 1987

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Francis V. Dow* and *Wayne L. Benjamin* of counsel), for appellant.

*Hutton & Solomon (Richard C. Agins* and *Roy F. Hutton* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J.

The issue before us is whether Supreme Court (134 Misc 2d 679) erred in declaring 20 NYCRR former 3.11 invalid as contrary to Tax Law § 208 (9) in that regulated investment companies were not entitled to deduct dividends paid to their shareholders in computing their entire net income for taxable years beginning prior to January 1, 1980 *(see,* Tax Law § 209 [7]). Respondent urges that the court erred in that petitioner's liability should be computed on the basis of investment company taxable income.

The facts underlying the issue are not in dispute. Petitioner was registered as an investment company in New York State during the taxable year ending April 30, 1976, and timely filed its Federal income tax return (form 1120) as a regulated investment company for that tax year. In the Federal tax return, petitioner claimed a $4,138,384.24 deduction for dividends paid to shareholders and reported zero "taxable income" for the year. Petitioner filed its State corporation franchise tax return for the taxable year ending April 30, 1976, in which dividends paid to shareholders were not deducted in the determination of "entire net income" in compliance with the regulations of respondent. Consequently, petitioner paid a franchise tax of $23,536.84.

On July 11, 1979, petitioner filed a form entitled "Claim for Credit or Refund of Corporation Tax Paid" with the State Department of Taxation and Finance for a refund of $16,813.17 of the franchise tax paid for the subject year. Petitioner's claim was based on the fact that its Federal "taxable income" for the year, which was zero, should have been the appropriate starting point for computing petitioner's "entire net income" and its State franchise tax liability pursu-

ant to Tax Law article 9-A. Petitioner contends that it should only be subject to the alternative corporation franchise tax based on the value of its capital allocated to the State. Thus, the amount of the claimed refund would be the excess of the tax paid over the tax due as computed on allocated capital.

Petitioner's claim was rejected. Petitioner demanded a hearing. Following a joint stipulation of facts, petitioner waived a formal hearing and submitted its case for decision based upon the entire file. On September 30, 1985, respondent denied petitioner's claim for a refund declaring that the tax imposed upon petitioner was properly based upon petitioner's entire net income as defined in its regulation, specifically 20 NYCRR former 3.11. Supreme Court reversed respondent's determination and held that respondent's regulation was invalid and contrary to the plain meaning of Tax Law § 208 (9).

We hereby affirm. The assessment of a franchise tax upon a corporation is a payment for the privilege of doing business in this State (see, Tax Law § 209 [1]; *Matter of Standard Mfg. Co. v Tax Commn.*, 114 AD2d 138, *affd* 69 NY2d 635). State franchise taxes are measured by a corporation's "entire net income" (Tax Law § 209 [1]), which is defined in Tax Law § 208 (9) as follows: "The term 'entire net income' means total net income from all sources, *which shall be presumably the same as the entire taxable income which the taxpayer is required to report to the United States treasury department,* or which the taxpayer would have been required to report, if it had not made an election under subchapter s of chapter one of the internal revenue code, except as hereinafter provided, and subject to any modification required by paragraphs (d) and (e) of subdivision three of section two hundred ten of this article" (emphasis supplied). On March 14, 1962, respondent promulgated 20 NYCRR former 3.11. This rule provided in relevant part:

"(a) *Entire net income* means total net income from all sources, and is presumed to be the same as the taxable income which the taxpayer is required to report to the United States Treasury Department for purposes of the Federal income tax imposed by chapter 1 of the Internal Revenue Code * * * However, neither the taxable income actually reported nor the taxable income actually determined for Federal income tax purposes is necessarily the same as the taxable income required to be reported for Federal income tax purposes under the provisions of the Internal Revenue Code. Ordinarily the

determination of the Commissioner of Internal Revenue is followed, but it is not binding on the State Tax Commission.

"(b) *Federal taxable income* is the starting point in the computation of entire net income. This means taxable income as defined in section 63 of the Internal Revenue Code, not any special type of taxable income such as 'investment company taxable income' or 'real estate investment trust taxable income' " (20 NYCRR former 3.11; emphasis in original).

Under the Internal Revenue Code (26 USC), a tax is imposed for each taxable year on the taxable income of every corporation (*see,* Internal Revenue Code § 11), which is defined in various places throughout the Internal Revenue Code. Unlike respondent's regulation, Internal Revenue Code § 11 does not restrict the definition to the one contained in Internal Revenue Code § 63, which provides, in part: "For purposes of this subtitle, in the case of a corporation, the term 'taxable income' means gross income minus the deductions allowed by this chapter" (Internal Revenue Code § 63 [a]).

Supreme Court concluded that Internal Revenue Code § 852 (b) (2) (D) governs as to "taxable income" of petitioner, as a regulated investment company, as adjusted. This provision provides, in relevant part:

"The investment company taxable income shall be the taxable income of the regulated investment company adjusted as follows * * *

"(D) the deduction for dividends paid (as defined in section 561) shall be allowed, but shall be computed without regard to capital gain dividends and exempt-interest dividends" (Internal Revenue Code § 852 [b] [2] [D]).

According to Revenue Ruling 72-383 (1972-2C, Cum Bull 442): "Section 852 (b) (1) of the Code imposes a tax on the investment company taxable income (as defined in section 852 (b) (2) of the Code) of every regulated investment company, as though the investment company taxable income were the taxable income referred to in section 11 of the Code."

We concur with Supreme Court's conclusion that respondent was incorrect in applying the definition of "taxable income" contained in Internal Revenue Code § 63. Tax Law § 208 (9) is clear in its statement that the figure to be used for computing "entire net income" shall be presumably the same as the "taxable income" that the taxpayer is required to report to the Federal Government. Since the Federal Government would arrive at petitioner's taxable income by way of Internal

Revenue Code § 852 (b) (2), and Federal law controls for the purpose of defining "entire net income" and is authorized by statute (see, Tax Law § 208 [9]; *Matter of Morton & Co. v New York State Tax Commn.,* 91 AD2d 1080, 1081, *affd* 59 NY2d 690), respondent's regulation is incorrect.

We find no merit in respondent's contention that because Tax Law § 208 (9) provides that the "entire net income" is *presumably* the same as Federal "taxable income", it has the discretion to define the latter term in its regulation. The term "presumably" was added to the statute in 1918 (L 1918, ch 276, amdg Tax Law former § 209). The addition was necessary because without it there was no opportunity afforded a taxpayer to have a hearing if there was a claimed inaccuracy in the figure reported to the Federal Government (see, *People ex rel. Standard Oil Co. v Law,* 237 NY 142, 147). The Court of Appeals held in *People ex rel. Barcalo Mfg. Co. v Knapp* (227 NY 64) that there was clear legislative intent that the State "net income" figure was to be the same as the Federal amount. We conclude, therefore, that respondent improperly defined Federal "taxable income" in its regulation.

We also find no merit to respondent's additional argument that the Legislature, by adding Tax Law § 209 (7) in 1979, somehow concurred with 20 NYCRR former 3.11 and respondent's interpretation of Tax Law § 208 (9). The amendment did not change the definition of "entire net income" as contained in Tax Law § 208 (9) or mention or refer to such section. The perceived purpose of the amendment was to relieve investment companies from the franchise taxes based on income, capital and the alternative tax based on income plus officers' compensation for periods commencing on and after January 1, 1980. From the legislative silence on the question, it cannot be inferred that the Legislature sanctioned the agency's administrative interpretation (see, *Haggar Co. v Helvering,* 308 US 389, 399-400). Neither does the existence of the regulation for many years give it validity (cf., *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, 13).

Respondent also asserts that when Tax Law § 208 (9) was enacted in 1944, the Legislature was constitutionally prohibited from fixing taxes by references to any other law, and it was not until the 1959 amendment to the NY Constitution that the prohibition was lifted. Thus, it is urged that Tax Law § 208 (9) is unconstitutional. We disagree. The 1959 amendment to NY Constitution, article III, § 22 permitted "the Legislature to enact income tax laws based upon and incorpo-

rating by simple reference, the Federal income tax laws" (Lewis, 1959 Tax Legislation, 1959 NY Legis Ann, at 314). The franchise tax is not an income tax, but rather a payment for the privilege of doing business in New York (Tax Law § 209 [1]). Respondent's constitutional argument thus fails.

Respondent next asserts that dividends paid were considered to be a "credit" rather than a "deduction" by the Legislature when it enacted Tax Law § 208 (9) (b) (1). Respondent points out that before the revision of the Internal Revenue Code in 1954, investment company dividends were part of the basic surtax credit and, thus, could not be considered in computing the State's "entire net income". Respondent concludes that the Legislature, being aware of the change when it enacted Tax Law § 208 (9) in 1944, never intended dividends to be included in investment company net income. We disagree. Terms used in the Tax Law are to be accorded the same meaning as those used in the Internal Revenue Code unless a different meaning is clearly required (see, Tax Law § 607 [a]; *Matter of Jablin v State Tax Commn.*, 65 AD2d 891, 892). The Legislature is aware of the meaning of "deductions" as opposed to "exemptions" or "credits" in the Internal Revenue Code. We hold that no modification is required for deductions allowed in the determination of Federal "taxable income", otherwise the amendment of Tax Law § 208 (9) (b) (3) in 1975 (L 1975, ch 895, § 2) would not have been necessary. Before the amendment, Tax Law § 208 (9) (b) (1) was limited to "exemptions" and "credits" and did not apply to "deductions". The amendment was intended to correct the situation by extending the modification for the deduction of income taxes paid to the United States to include also the deductions for income taxes paid to a possession of the United States and to a foreign country. This amendment underscores the fact that the Legislature clearly recognized that the term "deduction" is not synonymous with "credit" or "exclusion".

We concur with Supreme Court in concluding that none of the modifications of the Federal "taxable income" in the computation of "entire net income" as provided in Tax Law § 208 (9) (a) and (b) and Tax Law § 210 (3) (d) and (e) apply to the deduction allowed for dividends paid to the shareholders of petitioner.

Respondent also asserts that petitioner's "taxable income" was incorrect in the first place. Petitioner contends that Federal "taxable income", which is the starting point for computing "entire net income", is that which appears on line

28 of Federal form 1120. Line 28 of form 1120 reads "Taxable income before net operating loss deduction and special deductions". Petitioner claimed no operating loss deduction or special deduction. Respondent claims, however, that dividends paid are a specific deduction from taxable income and are not deductions which apply to taxable income of corporations generally. The basis for that contention is Internal Revenue Code § 852 (b) (2) (D), which provides that taxable income of a regulated investment company shall be "adjusted" by the deduction for dividends paid. According to respondent, this "adjustment" is something that occurs after Federal "taxable income" is formulated and is not relevant to computing "entire net income". This position is contrary to a letter ruling issued by the Internal Revenue Service to one of petitioner's subsidiaries. The letter ruling asserted that the deduction for dividends paid under Internal Revenue Code § 852 (b) (2) (D) should be shown as an "other deduction" on line 26 of form 1120, which is deductible in arriving at "taxable income". The United States Supreme Court has endorsed the value of letter rulings in interpreting Federal statutes *(see, Hanover Bank v Commissioner,* 369 US 672, 686-687).

We hold that the dividends petitioner paid to its shareholders were properly deducted in arriving at its Federal "taxable income".

MAHONEY, P. J., MAIN, CASEY and HARVEY, JJ., concur.

Judgment affirmed, without costs.