DeALMEIDA, P.J.T.C.
The question before the court is whether, during the period at issue, a corporation’s entire net income for New Jersey corporation business tax (“CBT”) purposes included the taxpayer’s extraterritorial income as that term was defined in I.R.C. § 114(e). For the reasons explained more fully below, the court concludes that New Jersey law couples a corporation’s entire net income for CBT purposes to its federal taxable income as defined by federal law with limited exceptions. Because federal law excluded extraterritorial income from federal taxable income during the period at issue and there was no exception to the federal statute in New Jersey law, extraterritorial income was also excluded from entire net income under the CBT. The Director, Division of Taxation, therefore, acted outside his statutory authority when he issued final determinations including in plaintiffs’ entire net income for CBT purposes the extraterritorial income they excluded on federal tax returns. As a result of this conclusion, the court reverses the Director’s final determinations and grants partial summary judgment to the taxpayers.
I. Findings of Fact
The court makes the following findings of fact based on the submissions of the parties in support of their cross-motions for partial summary judgment.
*105 Plaintiff International Business Machines Corporation (“IBM”) manufactures and sells computer hardware and licenses intellectual property, including pre-written and custom software applications, throughout the United States. During the period 2002 through 2004, IBM received income from sources within and outside the United States. Some of the income IBM received from outside the United States qualified as extraterritorial income, as that term is defined in I.R.C. § 114(e) (“gross income of the taxpayer attributable to foreign trading gross receipts ... of the taxpayer.”). At the time, federal law provided that “[gjross income does not include extraterritorial income.” I.R.C. § 114(a).
In accordance with I.R.C. § 114(a) and federal income tax return instructions, IBM included its extraterritorial income where appropriate on lines la through 10 of its federal income tax return for tax years 2002, 2003, and 2004, but then excluded its extraterritorial income on line 26. This calculation resulted in the following amounts on line 28 “Taxable income before net operating loss deduction and special deductions” on IBM’s federal returns: $14,595,004,875 (2002); $6,741,285,169 (2003); $3,398,995,648 (2004). IBM reported these exact amounts on its timely filed New Jersey CBT returns for tax years 2002, 2003, and 2004 as its entire net income subject to CBT.
After an audit of IBM’s returns, the Division issued a report stating “[ijncome from sources outside the United States that was not included in federal taxable income ... must be added back to a corporate entity’s federal taxable income to calculate the entity’s entire net income for corporation business tax purposes.” The Division added back to IBM’s entire net income the extraterritorial income IBM excluded from its federal taxable income for each tax year. As a result, on January 30, 2007, the Division issued a Notice of Assessment Related to Final Audit Determination assessing CBT, interest and penalties against IBM.
Following a protest, on July 15, 2008, the Director issued a final determination affirming the Notice of Assessment.
A timely appeal to this court followed. After completion of discovery, IBM moved for partial summary judgment on the *106 question of whether the Director had statutory authority to add back IBM’s extraterritorial income when calculating the corporation’s entire net income for CBT purposes. The Director cross-moved for partial summary judgment on the same issue.[1]
Plaintiff Crestron Electronics, Inc. is a New Jersey corporation that provides hardware and software used to control audio and video systems, as well as computer networks, security systems, and environmental systems, such as temperature and lighting. Crestron markets its products to businesses, consumers, government agencies, and schools worldwide.
Crestron timely filed 2004 and 2005 CBT returns on which it added back to its federal taxable income the extraterritorial income it excluded under federal law. The corporation took this step to avoid the risk of incurring penalties and interest in connection with this issue.
After an audit of its federal returns, Crestron filed amended CBT returns for tax years 2004 and 2005. On the amended returns, Crestron excluded from its entire net income for CBT purposes the extraterritorial income it had previously added back. As a result, Crestron recalculated its CBT obligation without inclusion of its extraterritorial income.
On audit of Crestron’s amended returns, the Division issued a Notice of Assessment Related to Final Audit Determination denying Crestron’s calculation of its CBT obligation. The Division determined that extraterritorial income should have been added back to Crestron’s entire net income for CBT purposes and rejected a reduction in Crestron’s CBT in the amount of $310,794 *107 for tax year 2004 and $295,525 for tax year 2005. After discovery, the parties cross-moved for partial summary judgment.
Having heard oral argument from the parties on different dates, the court consolidated the two matters for purposes of this opinion.
III. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express intent of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999)(quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). The court concludes that this matter is ripe for decision by summary judgment. There are no material facts genuinely in dispute between the parties and the validity of the Director’s final determinations can be decided by application of the law to the facts.
The court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997)(citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to *108 the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, judicial deference is not absolute. An administrative agency’s interpretation of the law that is plainly at odds with the statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008) (citing GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468).
It is against this backdrop of guiding principles that the court must evaluate the Director’s final determinations. The CBT Act imposes a tax on each non-exempt domestic corporation and foreign corporation “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2. The tax is imposed on a corporation’s “entire net income,” which is defined as follows:
“Entire net income” shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.
[N.J.S.A. 54:10A-4(k).]
This broad definition of entire net income is limited in the following paragraph of the statute:
For the purpose of this act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report ... to the United States Treasury Department for the purpose of computing its federal income tax____
[N.J.S.A. 54:10A-4(k)J
*109 This provision of the statute couples entire net income under the CBT Act to line 28 of the federal income tax return which is entitled “Taxable income before net operating loss deduction and special deductions.”
After linking entire net income for CBT purposes to line 28 of the federal return, the statute provides that “[e]ntire net income shall be determined without the exclusion, deduction of credit of’ and lists more than a dozen exceptions—both additions and subtractions—to federal tax statutes that define federal taxable income. See N.J.S.A. 54:10A-4(k)(2)(A) through (J). The extraterritorial income exclusion from federal taxable income incorporated in the Internal Revenue Code is not included in the exceptions cataloged in N.J.S.A. 54:10A-4(k)(2)(A) through (J).
 It is the meaning of N.J.S.A. 54:10A-4(k) that will determine the validity of the Director’s final determinations. Statutory construction begins with the statute’s plain language. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996) (quotations omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977) (quotations omitted). “ ‘The duty of the Director, and this court, is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary.’ ” Vassilidze v. Director, Div. of Taxation, 24 N.J.Tax 278, 291 (Tax 2008) (quoting Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div.1998)).
N.J.S.A. 54:10A-4(k) contains plain language coupling entire net income for CBT purposes to “taxable income, before net operating loss deduction and special deductions” for federal tax purposes. Line 28 on the federal income tax return contains *110 precisely that amount. Specific exceptions to this definition authorizing departure from the federal statute follow this statutory provision. The exclusion of extraterritorial income from federal taxable income incorporated in I.R.C. § 114(a) is not included among those exceptions. Extraterritorial income, excluded from federal taxable income by federal law, is, therefore, excluded from entire net income for CBT purposes. There is nothing ambiguous about the language of N.J.S.A 54:10A-4(k).
The fact that entire net income under the CBT Act is coupled to federal taxable income is well recognized by legal precedents. A corporation’s entire net income is presumptively the same as its federal taxable income before net operating loss deductions and special deductions. Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 313, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989). The CBT Act uses federal taxable income as a starting point to determine a corporation’s entire net income “unless the Legislature specifically enacts legislation nullifying the federal provisions.” Nine Franklin Corp. v. Director, Div. of Taxation, 13 N.J.Tax 121, 133 (App.Div.1993)(aecepting the Director’s argument that entire net income is equal to federal taxable income). As the Appellate Division explained, “[t]he Internal Revenue Code is intended to be controlling in determining taxable income under N.J.S.A. 54:10A-4(k).” Corporate Property Investors v. Director, Div. of Taxation, 15 N.J.Tax 205, 208 (App.Div.1995)(citing International Flavors & Fragrances, Inc. v. Director, Div. of Taxation, 5 N.J.Tax 617, 624 (Tax 1983), aff'd, 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 507 A.2d 700 (1986)); see also The Reuben H. Donnelley Corp. v. Director, Div. of Taxation, 128 N.J. 218, 224, 607 A.2d 1281 (1992)(“The CBT Act uses federal-taxable income as the starting point to determine a corporation’s entire net income.”)
The Attorney General of New Jersey acknowledged this interpretation of the CBT Act in a Formal Opinion issued in 1960. The Formal Opinion, which interpreted the then-existing regulation defining entire net income, provides:
*111 [t]he regulation does not appear to contemplate any departures from Federal taxable income other than those expressly prescribed in the statute. It is our opinion that, as suggested by the quoted regulation, the definition of “entire net income” is always equivalent to Federal “taxable income” and that the presumption, which the use of the term “prima facie” implies is subject to being rebutted, is a presumption as to the correctness of the amount of taxable income reported by the taxpayer or determined by the Internal Eevenue Service rather than the concept of “taxable income.”
[Attorney General Formal Opinion 1960-2 (Feb. 10, I960).]
Although courts “are not bound to adopt the Attorney General’s Formal Opinion as a correct statement of the law, it is nonetheless entitled to a degree of deference, in recognition of the Attorney General’s special role as the sole legal advisor to most agencies of State Government, including the Treasury Department and the Division of Taxation.” Quarto v. Adams, 395 N.J.Super. 502, 513, 929 A.2d 1111 (App.Div.2007) (citing Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 70, 389 A.2d 465 (1978) and Board of Educ. v. Board of Educ., 361 N.J.Super. 488, 494, 825 A.2d 1215 (App. Div.2003), certif. denied, 178 N.J. 454, 841 A.2d 92 (2004)). This is particularly true where an Attorney General’s Formal Opinion interpreting a statute has been followed by a long period of legislative inaction. “The absence of any amendment to a statute following an Attorney General’s formal opinion strongly suggests that the views expressed therein were consistent with legislative intent.” State v. Son, 179 N.J.Super. 549, 553, 432 A.2d 947 (App.Div.1981); accord Garfield Trust Co. v. Director, Div. of Taxation, 6 N.J.Tax 462, 471 (Tax 1984), aff'd, 7 N.J.Tax 664 (App.Div.1985), aff'd, 102 N.J. 420, 508 A.2d 1104, app. dis., 479 U.S. 925, 107 S.Ct. 390, 93 L.Ed.2d 345 (1986).
In support of his position the Director relies on the first sentence of N.J.S.A. 54:10A-4(k), which provides that “ ‘[ejntire net income’ shall mean total net income from all sources, whether within or without the United States____” If this were the only provision of N.J.S.A. 54:10A-4(k), the Director’s argument would prevail. The statute, however, does not end with this broad declaration. As noted above, the paragraph immediately following this provision provides a detailed explanation of how entire net income is calculated, deeming entire net income “prima facie to be equal in amount to the taxable income, before net operating loss *112 deduction and special deductions, which the taxpayer is required to report ... to the United States Treasury Department for the purpose of computing its federal income tax----” The following provisions establish detailed exceptions to the federal scheme for calculating federal taxable income.
The sweeping declaration that entire net income includes income from all sources is in the nature of an introductory paragraph, similar to I.R.C. § 61, which defines broadly income subject to federal tax as “all income from whatever source derived[.]” The first paragraph of both N.J.S.A. 54:10A-4(k) and I.R.C. § 61 are followed by more detailed statutory provisions defining income subject to tax. The first paragraph of N.J.S.A. 54:10A-4(k) must be read in conjunction with the language that immediately follows. The court is not permitted to ignore the unequivocal provisions of N.J.S.A. 54:10A-4(k) linking entire net income to federal taxable income with limited, express exceptions, Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969), or the established legal precedents recognizing that the Legislature coupled entire net income under the CBT to federal taxable income. Corporate Property Investors, supra, 15 N.J.Tax at 208; Nine Franklin Corp., supra, 13 N.J.Tax at 133 (App.Div.1993).
“[A]n isolated” reading of part of a statute “cannot be invoked to defeat a reasonable and fair construction” of the entire statute. Township of Delaware v. Director, Div. of Taxation, 52 N.J.Super. 63, 68, 144 A.2d 801 (App.Div.1958). If the first sentence of N.J.S.A. 54:10A-4(k) is read in isolation as setting the definition of entire net income for CBT purposes, the remainder of the statute coupling entire net income to federal taxable income and listing more than a dozen exceptions to federal statutes would be rendered meaningless. This unacceptable interpretation of N.J.S.A. 54:10A-4(k) is reflected in the fact that the Director cites no judicial precedent in the more than 50 years that the statute has been in place in which a court relies on the first sentence of N.J.S.A. 54:10A-4(k) to approve of a change in entire net income.
In addition, the history of the federal extraterritorial income exclusion confirms the court’s interpretation of the statute. In *113 2000, Congress enacted the Extraterritorial Income Exclusion Act of 2000, 114 Stat. 2423 (2000) (the “ETI Act”). The ETI Act had two functions: first, it repealed the I.R.C. Subpart C foreign sales corporation rules and second, it excluded extraterritorial income from federal taxable income. Repealing the foreign sales corporation rules was determined to‘be necessary to comply with decisions of a World Trade Organization (“WTO”) dispute panel and Appellate Body regarding a complaint brought to the WTO by the European Union. Sen. Rep’t No. 106-416 at 2, 5 (2000). Congress believed that repealing the foreign sales corporation rules would result in double taxation of some income earned abroad so it created an exclusion from federal taxable income for extraterritorial income. Id. at 6. The Legislature made no change to the CBT Act’s definition of entire net income in response to the enactment of the ETI Act.
Almost immediately after the ETI Act became effective, the European Union filed another complaint with the WTO, this time alleging that the extraterritorial income exclusion created a prohibited export subsidy. H.R. Rep’t No. 108-755 at 262 (2004). In 2002, a WTO Appellate Body agreed with the European Union and threatened sanctions until such time as the exclusion was repealed. Ibid.
In 2004, Congress repealed the extraterritorial income exclusion with a several-year phase-out. American Jobs Creation Act of 2004, 118 Stat. 1418 § 101 (Oct. 22, 2004). In place of the exclusion, Congress enacted I.R.C. § 199. Section 199 allows manufacturers to deduct a portion of their “qualified production activities income” from federal taxable income.
In response to the Congressional enactment of I.R.C. § 199, the Legislature enacted L. 2005, c. 127. That statute added subsection (k)(2)(J) to N.J.S.A. 54:10A-4, which provides for a partial exception to the I.R.C. § 199 exclusion when determining entire net income for CBT purposes. The provision states, in part:
[e]ntire net income shall be determined without the exclusion, deduction or credit of:
(J) Amounts deducted for federal tax purposes pursuant to section 199 of the federal Internal Revenue Code of 1986, 26 U.S.C. s.199, except that this exclusion *114 shall not apply to amounts deducted pursuant to that section that are exclusively based upon domestic production gross receipts of the taxpayer which are derived only from any lease, rental, license, sale, exchange, or other disposition of qualifying production property which the taxpayer demonstrates to the satisfaction of the director was manufactured or produced by the taxpayer in whole or in significant part within the United States but not qualified production property that was grown or extracted by the taxpayer.
[N.J.S.A. 54:10A—4(k)(2)(J).]
The enactment of this provision makes two points clear. First, the Legislature is capable of amending the CBT Act to create an exception to an exclusion from federal taxable income when it elects to do so. Second, if, as the Director argues, the first sentence of N.J.S.A. 54:10A-4(k) includes in entire net income for CBT purposes all foreign source income, amendment of the CBT Act in response to the enactment of I.R.C. § 199, which allows for the exclusion of foreign source income from federal taxable income, would not have been necessary. Because courts will not assume that a statutory provision is superfluous, Gabin, supra, 54 N.J. at 555, 258 A.2d 6, the court must consider the enactment of L. 2005, c. 127 as an illustration of the fact that the broad definition of entire net income in the first sentence of N.J.S.A. 54:10A-4(k) is tempered by the more specific, limiting provisions that follow.
Nor is the court convinced by the Director’s argument that because extraterritorial income is considered to be an exclusion under federal law, and not a deduction, that income is included in entire net income for CBT purposes. The plain language of N.J.S.A. 54:10A-4(k) does not vest any significance in the distinction drawn in federal tax law between exclusions and deductions. N.J.S.A. 54:10A-4(k) provides that entire net income for CBT purposes is “deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deduction, which the taxpayer is required to report” to the federal government. The language of the statute tracks line 28 of federal income tax returns. Whether income is excluded or deducted under federal law to calculate the amount of line 28 is of no moment with respect to the determination of entire net income for CBT purposes.
*115 The Director’s reliance on his regulation, N.J.A.C. 18:7-5.2(a)(l)(xi), is also unavailing. The regulation provides as follows
(a) “Taxable income before net operating loss deduction and special deductions,” hereinafter referred to as Federal taxable income, is the starting point in the computation of the entire net income. After determining Federal Taxable income, it must be adjusted as follows:
1. Add to Federal taxable income:
[[Image here]]
xi. All income from sources outside the United States which has not been included in computing Federal taxable income less all allowable deductions to the extent that such allowable deductions were not taken into account in computing Federal taxable income.
[N.J.A.C. 18:7-5.2(a)(1)(xi).]
By its plain language the regulation does not apply to the taxpayers’ extraterritorial income. In accordance with federal law, both taxpayers first reported their extraterritorial income on line 1 of their federal returns. The extraterritorial income was subsequently excluded pursuant to I.R.C. § 114(a) to arrive at taxable income before net operating loss deduction and special deductions for federal income tax purposes. Extraterritorial income was, therefore, “included in computing Federal taxable income” and does not fall within the ambit of N.J.A.C. 18:7-5.2(a)(1)(xi).
Moreover, if, as the Director argues, plaintiffs’ extraterritorial income falls within N.J.A.C. 18:7-5.2(a)(1)(xi), the regulation is invalid to the extent that it is applied to plaintiffs. As the Supreme Court recently instructed, the Legislature has the exclusive constitutional authority to impose a tax. Praxair Technology, Inc. v. Director, Div. of Taxation, 201 N.J. 126, 140, 988 A.2d 92 (2009) (citing N.J. Const. art. IV, § VI, ¶ 1). “[T]he proposition that the taxing power can be expanded by the Executive Branch via the adoption of regulations is simply erroneous. The Director’s exercise of his regulatory powers is circumscribed by the taxing authority in fact conferred by the Legislature.” Ibid.; accord GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468 (“[A]n administrative agency may not, under the guise of interpretation, extend a statute to give it greater effect than its language permits.”) (citations omitted); Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984) (“[A]n administrative interpretation which attempts to add to a statute some *116 thing which is not there can furnish no sustenance to the enactment.”)
This court has determined that N.J.S.A. 54:10A-4(k) couples entire net income for CBT purposes to federal taxable income, with limited exceptions set forth at N.J.S.A. 54:10A-4(k)(2)(A) through (J) and that extraterritorial income is not among those exceptions. The Director’s interpretation of N.J.A.C. 18:7-5.2(a)(l)(xi) to require that extraterritorial income, excluded from federal taxable income under I.R.C. § 144(a), be added back to entire net income for CBT purposes contradicts the statute and would extend the CBT Act to income not expressly taxed by the Legislature.
The court's view is not changed by the fact that the Director has been authorized to interpret the CBT Act so as to give it the broadest reach constitutionally permissible. See Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967). While the Director has wide latitude to interpret the CBT Act in a way that will maximize its reach to constitutional limits, he may not extend the tax to income not within the fair contemplation of the Legislature as derived from the text of the statute imposing the tax. Here, N.J.S.A. 54:10A-4(k) expresses a clear intent on the part of the Legislature to couple entire net income to federal taxable income with limited, explicit exceptions. The exclusion of extraterritorial income for federal purposes was not among the exceptions adopted by the Legislature. Thus, the limiting factor with respect to the reach of N.J.A.C. 18:7-5.2(a)(l)(xi) in this case is the text of N.J.S.A. 54:10A-4(k), not any constitutional parameters on the State’s ability to tax corporate income.
The taxpayers’ motions for partial summary judgment are granted. The Director’s motions for partial summary judgment are denied. Orders implementing the court’s decision will be issued to the parties.

 The Director's final determination also assessed CBT, interest and penalties against IBM after application of the “throw out rule” contained in N.J.S.A. 54:10A-6(B). At the request of the parties, the court deferred consideration of this aspect of the Director’s final determination until the facial constitutionality of the "throw out rule” is decided in Pfizer, Inc. v. Director, Div. of Taxation, 24 N.J.Tax 116 (Tax 2008), aff'd, 25 N.J.Tax 519 (App.Div.2010), leave to appeal granted, 204 N.J. 34, 6 A.3d 439 (2010), currently pending in the Supreme Court of New Jersey.